Fountain v. Fountain

PATSY G. FOUNTAIN v. V. E. FOUNTAIN, JR.

No. 8610SC225

(Filed 18 November 1986)

Husband and Wife § 12.1— separation agreement—provision for increase in alimony—issues as to oral agreement between parties and mutual mistake

In an action to enforce the provisions of a separation agreement where defendant alleged mutual mistake with regard to a provision allowing for adjustment of the amount of alimony and sought a reformation of the separation agreement to reflect the parties' oral agreement, the trial court erred in allowing summary judgment for plaintiff where there were two genuine issues of material facts: (1) whether the parties orally agreed to include in the separation agreement a provision for adjusting payments in accordance with actual increases in the cost of living rather than in accordance with the formula set out in the separation agreement, and (2) whether plaintiff was aware of defendant's mistaken belief that the formula in the separation agreement gave effect to the parties' oral agreement.

APPEAL by defendant from *Brewer, Judge.* Judgment entered 21 November 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 20 August 1986.

This is a civil action in which the plaintiff wife seeks to enforce against the defendant husband the provisions of a separation agreement executed on 19 September 1979. The agreement provides among other things that the defendant must supply the plaintiff a place to live and alimony in the amount of $1,000 per month during January through October and $1,500 per month during November and December. The defendant's evidence tends to show that the parties orally agreed to include in the separation agreement a provision for the annual adjustment of alimony and of the housing allowance to keep pace with the rate of inflation. Attorneys for the defendant drafted paragraph 7, which was ap-

proved by all parties and included in the separation agreement, to effectuate that oral agreement.

The defendant made payments consistent with the formula devised in paragraph 7 until June 1983 when the adjusted monthly alimony had reached $1,992.75. He then realized that under paragraph 7 alimony payments for 1989 would total $449,422.00 if inflation continued as it then existed. He informed the plaintiff by letter dated 28 April 1983 that the formula in paragraph 7 was the result of a mistake and that he intended to reduce his monthly alimony payment to reflect the parties' agreement to adjust alimony in accordance with changes in the cost of living. Since that time the defendant has made alimony payments in amounts ranging from $1,343.54 to $2,073.55.

The plaintiff instituted this action to compel the defendant to make alimony payments in accordance with the terms of the separation agreement and to recover damages for the intentional infliction of mental distress caused by the defendant's refusal to comply with their agreement. The defendant counterclaimed, alleging mutual mistake and seeking reformation of the separation agreement to reflect the parties' oral agreement and reimbursement of overpayments made pursuant to the formula in paragraph 7. The trial court allowed the plaintiff's motion and denied the defendant's motion for partial summary judgment on the issue of the defendant's liability under the separation agreement and denied the defendant's motion for summary judgment on his counterclaim. The defendant appealed.

*Manning, Fulton & Skinner, by John B. McMillan and Charles E. Nichols, Jr., for plaintiff appellee.*

*Faison, Brown, Fletcher & Brough, by O. William Faison and Reginald B. Gillespie, Jr., for defendant appellant.*

WEBB, Judge.

The defendant first argues that the trial court erred in denying his motion and in allowing the plaintiff's motion for summary judgment because the pleadings, affidavits and depositions establish the existence of a genuine issue of material fact regarding an error in drafting the formula included in paragraph 7.

In *McBride v. Johnson Oil and Tractor Co.*, 52 N.C. App. 513, 515, 279 S.E. 2d 117, 119 (1981), this Court stated:

> An instrument which fails to express the true intention of the parties may be reformed to express such intention when the failure is due to the mutual mistake of the parties, to the mistake of one party induced by fraud of the other, or to mistake of the draftsman. Such a mutual mistake of the parties may be one relating to the legal effect of the instrument. Where, by reason of an error of expression or mistake as to the force and effect of the language used, an instrument fails to express the intent of the parties, equity will afford relief. (Citations omitted.)

The defendant has presented uncontradicted evidence showing that he was mistaken as to the actual effect of paragraph 7 and that the failure of paragraph 7 to reflect his understanding of the parties' agreement was caused by a mistake of his attorney, the draftsman. This evidence includes the defendant's affidavit which states in part:

> 5. Mr. Horton [the defendant's attorney] stated that Mr. Howison [the plaintiff's attorney] had requested a cost of living adjustment, which would have the effect of maintaining the 1979 buying power of [$13,000.00]. . . . . This cost of living adjustment was to be based on the Consumer Price Index. Mr. Horton did not inform me, nor did I intend or understand that the cost of living adjustment requested by Mr. Howison to cause increase in payments to be made in any amount greater than actual increases in the cost of living, as measured by the Consumer Price Index.

In a letter to the plaintiff's attorney dated 9 February 1981 the defendant states that "[his] intent when negotiating the Separation Agreement, was to use a vehicle for increasing her cash alimony payments whereby she would not lose any purchasing power." Marvin V. Horton, who along with George Goodwyn represented the defendant during these negotiations, filed an affidavit stating that:

> At no time did Mr. Howison request or suggest that a provision be added to the proposed consent judgment, Paragraph

7 or any other portion of the Separation Agreement which would cause increases in payments to be made under Paragraph 7 in any amount greater than actual increases in the cost of living, as measured by the Consumer Price Index, nor did I at any time understand him as making any such request or suggestion. We therefore agreed, on behalf of our respective clients, to include a provision which would cause certain payments to be made under the proposed consent judgment and later under the Separation Agreement to be adjusted in accordance with the actual changes in the cost of living, . . . . We did not agree, nor was it our intention that the cost of living adjustment require increases in payments . . . in excess of actual increases in the cost of living, . . . . Based upon the purpose and intent of our agreement to include a cost of living adjustment in the proposed consent judgment, I made an original draft for inclusion therein and later in the Separation Agreement a provision which was intended to and I then understood to cause the payments to be made thereunder to be adjusted in accordance with actual changes in the cost of living, . . . . At no time did Mr. Howison inform me or suggest that this provision required increases in payments . . . in excess of actual increases in the cost of living . . . .

The defendant also presented the affidavit of Thomas Havrilesky, an expert in the field of estimation and forecasting of the buying power of the dollar and changes in the cost of living. Mr. Havrilesky stated that "[t]he formula called for in Paragraph 7 is neither a cost of living adjustment nor a mechanism to maintain the buying power of the dollar. Instead it operates to increase payments to which it applies in a fashion similar to a geometric progression." Finally, the result of the formula itself tends to show a drafting error. The separation agreement provides that the defendant shall pay to the plaintiff alimony totalling $13,000 per year. Assuming a 5% rate of inflation, which the defendant's expert witness believes to be lower than the actual projected rate of inflation, alimony payments for 1986 calculated to keep pace with the rate of inflation would total $19,682. Calculated according to the formula contained in paragraph 7 payments for the same year would total $106,994. In the year 2000, assuming the same inflation rate, actual cost of living increases would cause

the amount of alimony to increase to $28,782. Calculated according to paragraph 7, payments for that year reach $727,176,183.

The plaintiff argues that she has presented uncontradicted evidence that she and her attorney were aware of the effect of paragraph 7 at the time of execution and that the defendant has therefore failed to show a mutual mistake, which is necessary to his defense of mistake of the draftsman. Assuming for the sake of argument that the plaintiff is correct in her assertion that the defendant has presented no evidence of a mutual mistake, we are unable to agree that this failure would preclude the assertion of his defense.

> Reformation is also allowed when one party writes down the agreement in an erroneous way and the other party knows it. In such a case there is no mutual mistake at all in the layman's sense of the phrase, because only one party was mistaken. But here again, there was a previous agreement to which the writing can be reformed, and once again that is enough. In cases of this sort, courts often grant relief on the ground that there was a mistake on one side and fraud or inequitable conduct on the other.

D. Dobbs, *Handbook on the Law of Remedies* § 11.6 (1973).

> In some cases one who knows of another's mistake and says nothing will find himself bound by a contract that he did not intend to make. . . . The language of an agreement will be interpreted according to the meaning given to it by one party if the other had actual knowledge that such was the meaning so given. It is certain that such a bad actor will not be permitted to enforce the agreement according to its words in their usual meaning. The mistaken party is certainly entitled to recision; but he may, instead, get reformation and enforcement as reformed.

3 A. Corbin, *Contracts* § 610 (2d ed. 1960).

The plaintiff concedes that she and her attorney were aware of the effect of paragraph 7 prior to execution, leaving only two issues unresolved by the evidence. The first issue is whether the parties did orally agree to include in the separation agreement a provision for adjusting payments in accordance with actual increases in the cost of living rather than in accordance with the

schedule contained in paragraph 7. The defendant's and his attorney's affidavits contain evidence from which a jury could find that they did. The second remaining issue is whether the plaintiff was aware of the defendant's mistaken belief that the formula in paragraph 7 gave effect to that oral agreement. Evidence that the plaintiff and her attorney were aware of the effect of paragraph 7 would permit a jury to find that they were also aware of the defendant's mistaken belief. Therefore, the evidence presented at the hearing on the plaintiff's motion for partial summary judgment creates two genuine issues of material fact, rendering entry of summary judgment for either party inappropriate. If the jury should answer these issues favorably to the defendant he will be entitled to have the agreement reformed to express the true intent of the parties.

Reversed.

Chief Judge HEDRICK and Judge WELLS concur.